**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **11-02891-dd**

**ORDER**

The relief set forth on the following pages, for a total of 10 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**08/05/2011**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 08/05/2011

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 11-02891-DD |
| Sherri A. Knight, | Chapter 13 |
| Debtor. | **ORDER** |

This matter is before the Court on an Objection to Claim ("Claim Objection") filed by the chapter 13 trustee ("Trustee"). Trustee's Claim Objection was filed June 3, 2011, and Charles Courtney, Jr. filed a Response on July 7, 2011. Debtor did not file a formal objection to Mr. Courtney's claim but indicated at the hearing that she joined in Trustee's objection. A hearing was held on July 18, 2011. At the conclusion of the hearing, the Court took the matter under advisement for further consideration. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court now makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Debtor filed for chapter 13 relief on April 29, 2011. Debtor is employed and earns gross income of $1,820.00 per month; after payroll deductions, Debtor's Schedule I net income, including domestic support income, is $1,681.51. Debtor's monthly Schedule J expenses are $1,096.82, leaving her with disposable income of $584.69 per month. Debtor's Schedule D discloses $105,462.60 of secured debt, including debt secured by several non-purchase money security interests in household goods, debt secured by a lien on a 1993 GMC Envoy, and a debt to Mr. Courtney on a lot and a doublewide mobile home, listed on Schedule D as a security interest. Debtor's Schedule F shows unsecured debt of $8,778.88.

In February 2006, Debtor contracted with Mr. Courtney for the purchase of the mobile home and land. The parties signed a document of two short pages which contains little information about the transaction. The document lists the sales price of $45,000, and acknowledges receipt of an initial down payment of $2,500. It makes reference to a deferred down payment of $2,500 and monthly payments of $454.43 for twenty years beginning March 1, 2006, and states that the owner agrees to finance $40,000 at 12.5 percent. The document also lists "other costs," which include an "attorney fee for contract" in the amount of $60.00, homeowners insurance, and a water account set-up fee. Finally, the document states, "Purchaser must aquire [sic] insurance and utilities in their name prior to possession of the home." There is no reference to the transfer of title to the mobile home or lot.

The second page of the document contains a description of the lot and mobile home along with signatures for the seller and the purchaser. Debtor signed as the purchaser, and Sally Courtney signed as the seller. The document is on the letterhead of "Charles Courtney Jr. DBA Earth." Mr. Courtney did not sign the document.

Title to the land remains with Mr. and Mrs. Courtney. The property is subject to a mortgage held by First Federal Savings and Loan ("First Federal"). Mr. Courtney's Response indicates that he uses the payments he receives from Debtor to pay the mortgage with First Federal. Debtor obtained insurance on the mobile home and lot, as required by the parties' contract. The insurance policy lists Mr. Courtney and First Federal as loss payees.

Mr. Courtney filed a proof of claim in the amount of $1,591.90 and indicated that his claim is for an "arrearage on installment sales contract for purchase of residence." The proof of claim indicates that the underlying obligation is an executory contract and that the debt is

secured by a lien on real estate and a double wide mobile home. The proof of claim does not otherwise state the balance due, but only reports the pre-petition arrearage.

Debtor's Plan provides for payments of $573.00 per month for 57 months. Debtor's Plan proposes to value Mr. Courtney's claims on the lot and mobile home at $8,350 and $8,082, respectively. Debtor proposes to pay these obligations through the plan at $165.83 per month and $160.51, respectively, both at 5.25 percent interest.

## **CONCLUSIONS OF LAW**

Trustee objects to Mr. Courtney's claim because it is based on a contract for sale and not an executory contract. Trustee notes that Mr. Courtney did not record any mortgage or lien on the property. Trustee states that "the document is a contract selling the property to the Debtor and is not an executory contract retaining an interest in the property until all payments are made." Trustee's Claim Objection, docket no. 13. Trustee asserts that the debt to Mr. Courtney is unsecured. Mr. Courtney responds that the contract is ambiguous and therefore that parol evidence is admissible to show the parties' intent to enter into a contract for deed, which would be an executory contract. Trustee objects to the admission and consideration of parol evidence, as she argues that the contract is not executory and not ambiguous.

The Court must first address the nature of the document executed by the parties. The parties clearly have an agreement for the purchase of a lot and mobile home. However, the document is incomplete, and its informal nature gives the Court pause. After examination of the document and consideration of the numerous terms it has omitted, the Court finds that the document is not an integrated contract between the parties but appears to be merely a receipt and term sheet, which does not purport to contain the entire agreement of the parties.

Parol evidence in the form of "extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument" cannot be used to "contradict, vary, or explain the written instrument." *Davis v. KB Home of South Carolina, Inc.*, 2011 WL 2792385, at *5 (S.C. Ct. App. July 13, 2011) (quoting *Gilliland v. Elmwood Props.*, 301 S.C. 295, 302, 391 S.E.2d 577, 581 (1990)).  Additionally, "when the writing on its face appears to express the whole agreement, parol evidence cannot be admitted to add another term to the agreement, even when the writing is silent as to the particular term sought to be established." *Davis*, 2011 WL 2792385, at *6 (citing *U.S. Leasing Corp. v. Janicare, Inc.*, 294 S.C. 312, 318, 364 S.E.2d 202, 205 (Ct. App. 1988)).  However, when it is clear from the face of the writing that it is incomplete or does not represent the entire agreement of the parties, parol evidence is admissible to supplement the contract.  *Seitz v. Brewers' Refrigerating Mach. Co.*, 141 U.S. 510, 517 (1891); *Columbia East Assocs. v. Bi-Lo, Inc.*, 299 S.C. 515, 519, 386 S.E.2d 259, 261 (Ct. App. 1989) ("[W]here a contract is silent as to a particular matter, and ambiguity thereby arises, parol evidence may be admitted to supply the deficiency and establish the true intent.") (citing *U.S. Leasing Corp. v. Janicare, Inc.,* 294 S.C. 312, 364 S.E.2d 202 (Ct. App. 1988)).  *See also Ashe v. Carolina & N.W. Ry. Co.*, 43 S.E. 393, 394 (S.C. 1903) ("When the written evidence of the contract does not contain all the terms of the transaction between the parties, parol evidence (not contradicting or varying the writing) is admissible for the purpose of showing a contemporaneous independent agreement entered into between the parties.") (citing *Chem. Co. v. Moore*, 61 S.C. 166, 39 S.E. 346 (1901)); *Willis v. Hammond*, 19 S.E. 310, 314 (S.C. 1894) ("[U]nless the contract . . . was a complete unity, and therefore did not need anything to make it plain and operative, a resort to anything legally competent to make it plain, as expressing the agreement of the parties to such contract, is admissible.").   As stated by the

South Carolina Supreme Court, "To use a simile, if a span of a bridge be missing, that circumstance is manifest on casual observation, and the conclusion is instant that the whole structure is not present. So here, if the paper writings laid down show upon their face an incompleteness, then that which makes them complete may be shown by parol." *Midland Timber Co. v. Furman*, 97 S.E. 831, 831 (S.C. 1919).

Parol evidence is also admissible under certain circumstances if a contract is ambiguous. A contract is ambiguous if it is capable of more than one reasonable interpretation or if it "is unclear because it expresses its purpose in an indefinite manner." *Plantation A.D., LLC v. Gerald Builders of Conway, Inc.*, 386 S.C. 198, 205, 687 S.E.2d 714, 718 (Ct. App. 2009) (citing *Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 89, 232 S.E.2d 20, 25 (1977)). *See also Laser Supply and Servs., Inc. v. Orchard Park Assocs.*, 382 S.C. 326, 334, 676 S.E.2d 139, 144 (Ct. App. 2009) ("A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who (1) has examined the context of the entire integrated agreement; and (2) is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business.") (citing *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct. App. 1997)). In deciding whether a contract is ambiguous, the Court must look at the contract as a whole and should not consider portions of the contract in isolation. *Silver v. Aabstract Pools & Spas, Inc.*, 376 S.C. 585, 591, 658 S.E.2d 539, 542 (Ct. App. 2008). If a court decides that a contract is ambiguous, it can consider parol evidence in order to determine the true meaning of the contract and the actual intent of the parties. *Cullen v. McNeal*, 390 S.C. 470, 482, 702 S.E.2d 378, 384 (Ct. App. 2010) (quoting *Penton v. J.F. Cleckley & Co.*, 326 S.C. 275, 280, 486 S.E.2d 742, 745 (1997)); *Harris*

*v. Ideal Solutions, Inc.*, 385 S.C. 74, 79, 682 S.E.2d 523, 526 (Ct. App. 2009) (quoting *Charles v. B&B Theatres, Inc.*, 234 S.C. 15, 18, 106 S.E.2d 455, 456 (1959)).

In the present case, the Court finds that the parties' contract is both incomplete and ambiguous. It is evident that the contract does not constitute the parties' complete agreement, as it contains no provision regarding the transfer of title of the mobile home and lot to Debtor. Additionally, the contract does not set forth any obligations on behalf of either party, with the exception of the amount of monthly payments and a statement that "[p]urchaser must aquire [sic] insurance and utilities in their name prior to possession of the home." The contract lists "other costs" which include an "attorney fee for contract" of $60. However, it does not provide any details about what contract this fee relates to or when it will be prepared. Additionally, there is no statement of when the "other costs" are due, with the exception of the provision providing that insurance and utilities must be acquired prior to possession of the home. There are no provisions regarding the payment of the deferred down payment, and no date or timeline is given regarding when the purchaser receives possession of the home. The contract is signed by Sally Courtney and Debtor. However, evident on the first page of the contract is a letterhead which contains the name of Charles Courtney Jr. DBA Earth. The contract simply designates Sally Courtney as the seller and does not provide explanation regarding why she signed the contract instead of Mr. Courtney.[1] As noted above, the parties' agreement clearly was not intended to be the parties' entire agreement, as it contains only some basic terms of the transaction and omits terms that are inherent in any real estate transaction. Given that many of the terms of the parties'

---

[1] The Court notes that although the mobile home and lot are jointly owned by the Courtneys, the omission of Mr. Courtney's signature on the contract could render the contract unenforceable as to Mr. Courtney. As such, it is at least possible that Mr. Courtney is not even bound by the contract at all. Trustee requested that the Court consider evidence she provided which indicated that the Courtneys were in business together and that the contract was signed by Sally Courtney as an agent of "Earth", the Courtneys' business. Trustee's request to consider this evidence seems to be in direct conflict with her argument that no parol evidence can be considered by the Court. In any event, the Court reaches the same result, whether Mr. Courtney is bound by the contract or not.

transaction were left out of the document at issue, the Court finds that the document does not constitute their entire agreement; as a result, the contract is incomplete and ambiguous, and parol evidence is admissible to determine the parties' intent.

In support of his Response to Trustee's Objection, Mr. Courtney submitted an affidavit.[2] His affidavit states that he is in the business of purchasing and selling lots and mobile homes. He states that it is his standard practice to use contracts substantially similar to the one at issue, and over the years he has entered into over 200 of those contracts. He additionally states that it is his regular practice to enter into a contract like the one at issue as a "preliminary contract" so that the "purchaser may obtain power, water, and insurance for their new home." Affidavit of Charles Courtney, Jr., pg. 1. After the "preliminary contract" is signed, a second contract, which is the land sale contract, is prepared and executed by the parties. The attorney fee specified in the "preliminary contract", Mr. Courtney's affidavit claims, was for the preparation of the second land sale contract. His affidavit also states that it was the parties' understanding that Ms. Knight knew and understood that she would not receive a deed or title to the property until the balance of the loan had been paid in full. The affidavit does not explain why the second contract was never entered into in this case.

The Court also finds it significant that the parties entered into the preliminary contract over five years ago, yet no deed or title to the mobile home and lot were ever delivered to Debtor. Additionally, no evidence was presented that Debtor made any demand for Mr. Courtney to turn over title to the mobile home and lot. In fact, neither Debtor nor Trustee presented any evidence in opposition to that presented by Mr. Courtney, other than to argue that the Court could not consider Mr. Courtney's affidavit and other parol evidence presented by Mr.

---

[2] Mr. Courtney was in the courtroom and available to testify and be cross-examined. The Court inquired whether Mr. Courtney's direct testimony from the stand would differ from the affidavit and was told that such testimony would be consistent with the contents of the affidavit.

Courtney. Based on the parol evidence submitted to the Court, the Court finds that the parties intended for the contract to be a land sales contract, such that Mr. Courtney retained title to the mobile home and lot until Debtor completed payments on the parties' contract.

Having determined the parties' intent with respect to the contract, the Court must now decide whether the contract is an executory contract. While the Bankruptcy Code does not define the term "executory contract," a now well-accepted definition for that term states that an executory contract is "a contract under which the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Comm. Bankr. Lt. § 8.2 (citing Countryman, Executory Contracts in Bankruptcy (pt. I), 57 Minn. L. Rev. 439, 460 (1973)). *See also* 3 Collier on Bankruptcy ¶ 365.02[2][a] (16th ed. 2011). The majority of bankruptcy courts, as well as the South Carolina Supreme Court, have often treated land sales contracts as executory contracts. *In re Finklea*, No. 06-02828-dd, at 4-5 (Bankr. D.S.C. Oct. 6, 2006) (quoting *In re Jones,* 118 B.R. 395 (Bankr. D.S.C. 1989)). *But see* 3 Collier on Bankruptcy ¶ 365.02[2][a] (16th ed. 2011) ("Because of the similarity of [installment land sale contracts] to secured mortgage loans, courts have often treated them as secured debts rather than executory contracts.").

In the present case, it appears that both parties still have material obligations to perform under the contract. Debtor has to continue making payments, and at the conclusion of those payments, Mr. Courtney must deliver title to the mobile home and lot to Debtor, although the contract does not explicitly contain a provision providing for such transfer. Debtor also is required to maintain insurance and taxes on the property. Given the unperformed obligations of

both parties, as well as the common treatment of this type of contract as an executory contract, the Court finds that the parties' agreement is an executory contract.

Further, First Federal has a mortgage on the property in question.[3] While the parties' contract does not address that mortgage, Mr. Courtney must continue to make payments on that mortgage. If the Court reached a different result than the one reached today, First Federal's mortgage would be unaffected. As a result, Mr. Courtney cannot convey good title to Debtor, and if he was required to transfer the property to Debtor, Debtor would be left with an additional, significant obstacle to overcome. Clearly, that situation is not in Debtor's best interest.

11 U.S.C. § 365 provides two alternatives with respect to an executory contract: the contract may either be assumed or rejected. As the Court has concluded that the contract in question is an executory contract, Debtor must either decide which of these options she wishes to pursue or must reach some agreement with Mr. Courtney. Otherwise, Debtor cannot value Mr. Courtney's claim in her chapter 13 plan and cannot treat his claim as a security interest in the property.

## **CONCLUSION**

Because the contract between Mr. Courtney and Debtor is incomplete and ambiguous, parol evidence is admissible to determine the parties' intent. Parol evidence shows that the parties' contract is an executory contract. As a result, Mr. Courtney's claim cannot be valued and otherwise treated as a security interest in Debtor's chapter 13 plan. Debtor must either assume or reject the contract, in accordance with 11 U.S.C. § 365.

AND IT IS SO ORDERED.

---

[3] Debtor's counsel stated at the hearing on Trustee's Objection that Debtor was unaware of this mortgage. However, Debtor obtained insurance on the property and had both Mr. Courtney and First Federal listed as loss payees. That clearly undermines Debtor's claim of ignorance as to First Federal's mortgage.